Curia, per

Harper, J.
From the best consideration I have been able to give the case, I am of opinion that the evidence which was offered to shew that Thomas P. Evans was the general agent of the attorney, Josiah J. Evans, authorized to receive moneys in his professional business, ought to have been received. It is true that “one who has an authority to do an act for another, must execute it himself, and cannot transfer it to another ; for this being a trust and confidence reposed in the party, cannot be assigned to a stranger, whose ability and integrity were not so well thought of by him for whom the act was to be done; therefore, an executor having authority to sell, cannot sell by attorney.” Bac. Abr. Authority, D. With respect to the authority of an executor, this court has made a similar *212 determination in the case of Black vs. Erwin, Harp. 411. An attorney in fact cannot substitute anothei in his place, unless the power of substitution be given him. But I think the distinction is between a private authority and a public employment, in which the person exercising it must almost necessarily employ sub-agents. In Bac. Abr. Attorney, it is said, “ An attorney is one set in the place of another, and is either public, as an attorney at law, whose warrant is tails ponitloco suo talem attornatum; or private,-who has authority given him to act in the place and stead of him by whom he is delegated, in private contracts and agreements.” In the case of factors, bankers, auctioneers, and persons exercising similar public employments, whose business it is to receive money on account of their principals and employers, I suppose it would hardly be doubted that a payment to a clerk usually employed for that purpose in the course of their business, would be good. The cases are frequent in the books in which factors’ and merchants’ correspondents, authorized to buy and sell goods, effect insurance, (fee. execute their commissions by means of brokers or sub-agents. If a private attorney, authorized to receive .money, should in fact receive it through a sub-agent, no doubt the person paying would be discharged. The case of Yates vs. Freckleton, Doug. 600, though it has been quoted for a different purpose, seems to me rather in favor of the authority of the attorney’s agent to receive. In that case, the plaintiff’s attorney in town enclosed a note to Fox (who was also an attorney) in Coventry, requesting him to present it to the defendant, and if it was not immediately paid, to return it, and he would send down a writ to arrest defendant. Payment was refused, and the note returned, and the attorney'sent down a writ to Fox, who caused the defendant to be arrested on it. Afterwards defendant paid the money to Fox, who did not. pay it over, and the question was whether this was a good payment. The court decided that an agent employed to sue, is not, therefore, authorized to receive payment, and that the letter, so far from importing an authority to receive the money, implied the reverse, in case the note should not be paid voluntarily, because, in that event, Fox *213 was to return it. The court goes upon Fox the agent’s want of authority from the attorney to receive the money, without questioning that if he had such authority, the payment would have been good. So in Griffiths vs. Williams, 1 T. R. 710, the defendant had obtained an irregular order for paying money into court. Plaintiff’s attorney gave notice to defendant that he would not receive it, but a few days afterwards, plaintiff’s agent in town took out the money, and it was held, that though the order for paying the money into court was irregular, plaintiff was bound by this act of his agent. In the marginal note to the case it is said, “ The plaintiff is bound by the acts of his attorney’s agent in town.” Such I understand the agent to have been. The practice, I believe, is, that the country attorney who makes up the proceedings at nisi prius, employs an agent, who is an attorney, in town, to attend to the cause at Westminster, and this substituted attorney it is, who is called the plaintiff’s agent.
If the non-suit had been granted, it must have been set aside, from the view which we have taken on this part of the case. But we think the presiding judge determined correctly in refusing the non-suit, on the grounds taken by him, This was a collateral issue, directed for the purpose of informing the court on the trial of the principal cause, in which the defendant became the actor. For this reason, I think the authority quoted by the appellee’s counsel to be applicable. “One cannot be non-suit'in any action in which he is not an actor or demandant; and though he afterwards become an actor, yet not being originally so, he cannot be non-suit, as an avowant. So of Garnishees, who become actors but were not so originally.” A case has been referred to in which a non-suit was granted in an issue directed out of chancery, by one of our courts of law. l am not informed of that case, but.I am satisfied the practice was irregular. The issue is directed, it is said, for the purpose of satisfying the conscience of the Court of Equity, and the parties are under the direction of that court in all matters respecting the conducting of the cause. According to the English practice, when an issue was not tried as directed by the court, nor any notice *214 of trial given, an order was made that plaintiff might ■ be directed to try the issue at the next assizes, or in default, that it might be taken pro confesso ; 4 Madd. R. 255. So “ defendant neglecting to name an attorney for the purpose of trying an issue out of this court, was directed to do it in four days, or the issue to be taken as tried, and verdict for plaintiff.” Dick. 521, quoted Bridg. Dig. of Equity Practice, Tit. Issue. In the same place it is said that “ when an issue is directed, the party applying for it will be limited to some precise time within which it should take place.” New trials on issues out of chancery are granted by the court directing the issue, and it is said an application for a special jury ought to be made to that court. 2 P. Wms. 68. It is said that a non-suit granted in invitum, according to our practice, must be regarded as a determination on a demurrer to evidence. This is not precisely so. A judgment on a demurrer to evidence, according to the English practice, is final, and a bar to any future action. We do not regard the judgment of non-suit as a bar ; it determines nothing. I have met with no English case in which an issue out of chancery has been determined on a demurrer to evidence, and I am satisfied there cannot have been any such case. Issues are directed where there is contradictory evidence raising a doubt, or witnesses are discredited after the case proved — but not where a party fails to establish his case. I Ball & Beat. 283, 550. A demurrer to evidence is an admission of the truth of the facts stated, and of the inferences which a jury might draw from those facts, and of course there can be no demurrer to evidence, where there is contradictory evidence raising a doubt, or where witnesses are discredited. It is similar to a case stated, and the judgment on the demurrer is the conclusion of law from the facts admitted. It is true that it is the practice of the English Courts of Equity to send cases stated to the Courts of Law for their opinions, but those are not issues for a jury. It is notour practice, however. There being a common tribunal to which an appeal lies, both from the Courts of Law and Equity, it would be of no advantage, but only occasion additional expense and delay, to send cases to the Courts of Law for their *215 opinions. And for a similar reason, in a case like the present, there would seem to be no object or purpose in obtaining the opinion of one judge of the Courts of Law, for the information of another judge of the Courts oí Law. Apart, however, from the circumstance of this being a collateral issue for the information of the court, if it had been an ordinary suit, I do not think we could interfere with the discretion of the judge, in refusing to grant a non-suit after the jury were charged with the case and had retired. The practice of granting non-suits, in invitum, for defect of evidence, has grown up in our own courts; according to that practice, the usual course is to move for non-suit on . the closing of the plaintiff’s testimony, and before giving testimony on the part of the defendant. It is true that the court, on its own motion, to answer the justice of the case, does sometimes order a non-suit at any time before verdict rendered. But when a defendant has submitted his cause to the jury, by giving evidence and suffering them to retire, I do not perceive on what ground he can claim to retract his submission, and demand a compulsory non-suit. In the American edition of Bac. Abr. it is said, referring to Hough vs. Young, 1 Wash. 151, that a demurrer to evidence may be allowed at any time before the jury retire. On all the grounds the motion is dismissed.
Johnson and O’Neall, JJ. concurred.